UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID A. DRAGO | CIVIL ACTION |
| VERSUS | NO. 13-563 |
| QIANA S. SYKES, ET AL | SECTION "N"  (1) |

### ORDER AND REASONS

Before the Court is a Motion to Remand **(Rec. Doc. 4)**, filed by the plaintiff.  Opposition memoranda are filed at Rec. Docs. 5 and 11.  A reply memorandum was filed at Rec. Doc. 8.

### I. BACKGROUND:

This case arises out of a car accident on September 26, 2011, in which the plaintiff rear-ended a vehicle driven by Qiana Sykes.  Plaintiff's insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), settled without litigation the personal injury and property damage claims filed by Ms. Sykes.  One year after the accident, on September 25, 2012, plaintiff filed suit in the Civil District Court, Parish of Orleans, against Sykes, her insurer (Geico Indemnity Company), and State Farm, alleging that Sykes was at fault for the accident and that State Farm owes him under-insured motorist coverage.  (Rec. Doc. 4-3).

On December 7, 2012, plaintiff filed a motion to dismiss Sykes and Geico after settling with Geico for policy limits of $30,000.  (Rec. Docs. 4-5 at 7, 4-6).  However, notice of this dismissal was not served on State Farm, and it did not obtain a copy of the motion or the state court's order of dismissal until March 11, 2013.  *See* Rec. Doc. 4-11; *see also* Rec. Doc. 1 at 5-6. On March 27, 2013, State Farm removed the case to this Court on the basis of diversity.

## II. LAW AND ANALYSIS:

Plaintiff seeks remand on grounds that the removal is untimely under 28 U.S.C. § 1446(b).  Plaintiff argues:  (1) that Sykes was a Texas resident at the time of the initial pleading and, thus, that pursuant to 28 U.S.C. § 1446(b)(2)(B), the thirty-day window for removal commenced when State Farm received the initial state court petition; and (2) that alternatively, pursuant to 28 U.S.C. § 1446(b)(3), the thirty-day window commenced on November 20, 2013, when State Farm received discovery responses indicating that plaintiff had settled with Geico and revealing that plaintiff had undergone shoulder surgery.

### A.     The Citizenship of Qiana Sykes:

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)).  "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Id.*   Federal courts have diversity jurisdiction where there is complete diversity between all plaintiffs and all defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).[1]   There is no dispute here as to whether the $75,000 jurisdictional amount is satisfied.   The parties also agree that the citizenship of the

---

[1] In removal cases, as a general rule, "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir.1996).   However, an exception to this rule exists where the non-diverse defendant is dismissed voluntarily by the plaintiff.   In such cases, the matter becomes removable even though diversity did not exist at the time suit was filed.  *See Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967); *see also, e.g., Mumfrey v. ANCO Insulations,* 2011 WL 4745626 (E.D. La. 2011).

plaintiff (a Louisiana resident) is and was at the time of removal diverse from that of the sole remaining defendant, State Farm (an Illinois corporation with its principal place of business in Illinois).  Thus, the requirements of 28 U.S.C. § 1332 are met, and this Court has subject matter jurisdiction over the case.

Although Qiana Sykes has been dismissed as a defendant, her citizenship remains at issue because it bears upon plaintiff's argument that the removal was untimely.   Plaintiff argues that Sykes was a Texas resident at the time of the initial pleading and, thus, that the thirty-day window for removal commenced when State Farm received the state court complaint.

"[T]o be a citizen of a state within the meaning of the diversity provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996); *see also Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."), *cert. denied*, 419 U.S. 842 (1974).  "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas*, 489 F.2d at 1399 (internal quotations omitted). In determining domicile, the court "should look to all evidence shedding light on the litigant's intention to establish domicile." *Coury*, 85 F.3d at 251.  Relevant factors may include where the litigant votes, works, maintains his or her home, owns property, has a driver's license, and pays taxes, among others. *Id.*  "No single factor is determinative." *Id.*  A litigant's statement of intent "is relevant to the determination of domicile," but it cannot override the objective facts. *Id.*  "A change in domicile typically requires only the concurrence of:  (1) physical presence at the new location and (2) an intention to remain there indefinitely;...or, as

some courts articulate it, the absence of any intention to go elsewhere." *Coury*, 85 F.3d at 250 (citations omitted).   Although one may have more than one residence, as a general rule, a person has only one domicile at any given time.  *See Acridge v. Evangelical Lutheran Good Samaritan Society*, 334 F.3d 444, 451 (5th Cir. 2003).

In this case, the question of domicile is not a close one.  Although plaintiff alleged in his petition that Sykes was a resident of Texas, Sykes has attested that she resided in New Orleans at the time of the accident and has continued to reside here through the present date.  (Rec. Doc. 5-1).  She attests that she was born in Louisiana and returned here from Texas prior to the accident with the intent of making New Orleans her permanent home.  *Id.*   Her actions bear out her stated intent.  In addition to residing in New Orleans, Sykes is employed in Louisiana and takes classes at a local college in New Orleans.  *Id.*   Indeed, all of the record facts support the conclusion that Sykes was a domiciliary of Louisiana at the time suit was filed and has remained so thereafter.  Plaintiff argues (apparently based on the police accident report) that Sykes had a Texas driver's license at the time of the accident (on September 26, 2011).   However, plaintiff has not shown that Sykes retained even this thin tie to Texas at the time suit was filed one year later.  All of Sykes' actions support her affidavit testimony that she moved to Louisiana with the intent to make it her permanent home.   She resides here; she works here; and she attends school here.  Ms. Sykes is a Louisiana domiciliary.

**B.     Commencement of the Thirty-Day Removal Period:**

Ordinarily, a defendant must file a notice of removal within thirty days after receiving a copy of the initial pleading setting forth the claim for relief.  28 U.S.C. § 1446(b)(2)(B).

4

However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant...of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  Stated differently, "if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it.  If the initial pleading did not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable."  *Mumfrey v. CVS Pharmacy, Inc.,* — F.3d —, 2013 WL 2476402 *4 (5th Cir. June 10, 2013).

    **1.**    **Plaintiff's Argument that the Thirty-Day Removal Period Commenced Upon State Farm's Receipt of the Initial Pleading:**

Plaintiff argues that his initial pleading triggered the thirty-day removal clock because he alleged therein that Sykes was a Texas resident.  According to plaintiff's argument, since he alleged out-of-state citizenship for each of the defendants, State Farm's receipt of the initial pleading triggered the thirty-day clock regardless of whether the bases for diversity jurisdiction actually existed at that time.  The Court disagrees.  A case is removable only if it is one over which federal district courts would have original jurisdiction. 28 U.S.C. § 1441(a).  Because both Sykes and plaintiff are (and were on September 25, 2012) Louisiana domiciliaries, diversity jurisdiction did not exist when suit was filed or when State Farm received a copy of the initial pleading.  Thus, the case stated in the initial pleading was not removable, and plaintiff's

mistaken allegation that Sykes was a Texas resident could not render it otherwise.[2]  *See, e.g., Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 786 (5th Cir. 2012) ("[P]arties ... may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver.") (quoting *Buchner v. FDIC*, 981 F.2d 816, 818 (5th Cir. 1993)).  Indeed, had State Farm removed the case based upon the initial pleading, the Court's examination of the jurisdictional facts almost certainly would have resulted in remand and possibly even sanctions given that State Farm knew (based upon its earlier interactions with Sykes' in settling her claims) that Sykes was a Louisiana resident.   Because the parties lacked complete diversity of citizenship, the case stated in the initial pleading was not removable, and State Farm's receipt of the initial pleading did not trigger the thirty-day clock.

There is another reason why the initial pleading could not have commenced the thirty-day removal period.   The petition did not "affirmatively reveal[] on its face that the plaintiff [was] seeking damages in excess of the minimum jurisdictional amount." *Mumfrey*, 2013 WL

---

[2]  Nor did State Farm render the case removable, as plaintiff argues, by stating in its answer that all plaintiff's allegations were "denied...except to admit status and domicile...." Rec. Doc. 4-4.  Even if this "admission" could be construed to refer to Sykes' domicile and not just State Farm's own domicile, parties cannot confer jurisdiction on a court. *Ballew*, 668 F.3d at 786.  Also off base is plaintiff's oblique argument that State Farm should be judicially estopped from now arguing that Sykes is a Louisiana domiciliary, given its earlier "admission" that she had a Texas domicile.  *See* Rec. Doc. 8 at 2.  State Farm's current position is not clearly inconsistent with the boilerplate statement in its answer concerning domicile and even if it were, no court accepted the earlier position to State Farm's advantage.  *See, e.g., Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 291 n.18 (5th Cir. 2012) ("Judicial estoppel is an equitable doctrine, invoked at the court's discretion, that is designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment....Louisiana and the Fifth Circuit apply this doctrine only if the party's position is clearly inconsistent with its position in a previous case, and if the court accepted the party's previous position.").

2476402 at *5 (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)). As explained in *Mumfrey*, the Fifth Circuit has rejected the "so-called due diligence standard," adopting instead a "bright line rule" requiring a "specific allegation that damages are in excess of the federal jurisdictional amount" in order for the pleading to trigger the removal clock:

> In our seminal case on timeliness disputes, *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir.1992), this Court held that the thirty-day removal period under the first paragraph is triggered only where the initial pleading "*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* at 163 (emphasis added). The *Chapman* court specifically declined to adopt a rule which would expect defendants to "ascertain[ ] from the circumstance[s] and the initial pleading that the [plaintiff] was seeking damages in excess of the minimum jurisdictional amount." *Id.*
>
> The *Chapman* court had several practical ramifications in mind when it announced this standard. By rejecting a so-called due-diligence standard, it sought to promote efficiency by preventing courts from expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading. *Id.* Morever, the *Chapman* court wanted to avoid encouraging defendants to remove cases prematurely for fear of accidentally letting the thirty-day window to federal court close when it is unclear that the initial pleading satisfies the amount in controversy. *Id.* Ultimately, *Chapman* lays out a "bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a *specific allegation that damages are in excess of the federal jurisdictional amount*." *Id.* (emphasis added).

*Mumfrey*, 2013 WL 2476402 at *5 (quoting *Chapman*, 969 F.2d at 163). In this case, plaintiff's initial pleading did not contain a specific allegation that plaintiff's damages exceeded the jurisdictional amount. *See* Rec. Doc. 4-3. The only hint as to quantum was the allegation that "the injuries to Mr. Drago are valued in excess of $25,000." *Id.* at ¶ VIII. Therefore, for this additional reason, the initial pleading did not trigger the thirty-day removal clock in this case.

### 2. Plaintiff's Argument that the Thirty-Day Removal Period Was Triggered by His Discovery Responses on November 20, 2013:

Plaintiff argues in the alternative that under 28 U.S.C. § 1446(b)(3), the thirty-day removal period commenced to run on November 20, 2013, when State Farm received discovery responses indicating that plaintiff had settled with Geico and revealing that plaintiff had undergone shoulder surgery and steroid injections. Pursuant to section 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant...of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Plaintiff argues that his responses to interrogatories constitute "other paper" from which State Farm should have known that the case had become removable. In his responses to interrogatories, dated November 20, 2013 (and presumably received by State Farm shortly thereafter), plaintiff stated that he had undergone surgery for a torn tendon in his shoulder and had received steroid injections for sciatica and lumbago. Rec. Doc. 4-5 at 3. He also stated that he had "settled with tortfeasor's insurer, Geico Indemnity Insurance Co., for policy limits of $30,000.00." *Id.* at 7.

The Fifth Circuit's test for whether an "amended pleading, motion, order or other paper" is sufficient to trigger the thirty-day removal period was enunciated in *Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5th Cir. 2002). In *Bosky*, a jurisdictional amount case, the court was asked to decide whether the plaintiff's answers to interrogatories had triggered the removal clock even though they did not state that the plaintiff's claims exceeded $75,000. *See* Appellant's

Brief, 2001 WL 34127779 at *7-8.[3]  The district court held that they did not, finding that the only thing they revealed with certainty about jurisdictional amount was that the plaintiff had accumulated medical bills of nearly $50,000, a sum which fell short of the jurisdictional threshold by more than $25,000.  *See* Memorandum Opinion and Order, Civ. Action No. 00-CV-284, Rec. Doc. 24 at 7 (E.D. Tex. Dec. 20, 2000).   The district court rejected the plaintiff's argument that her discovery response regarding medical bills, when taken together with plaintiff's prayer for other categories of unliquidated damages in her original petition and given a general knowledge about quantum for similar cases, should have put the defendant on notice that the amount in controversy exceeded $75,000.  *Id.*  The Fifth Circuit agreed.  *Bosky,* 288 F.3d at 209.  In affirming, the Fifth Circuit noted that, under the text of the removal statute, the only sort of amended pleading or "other paper" that will trigger the removal clock is one "from which it *may first be ascertained* that the case is...removable." *Id.* at 210 (emphasis in original). "'Ascertain' means 'to make certain, exact, or precise' or 'to find out or learn with certainty.'" *Id.* at 211 (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990)).   The court concluded that "ascertain" requires "that the facts supporting removability be stated unequivocally."[4]  *Id.*  Although information in a document might "place[ a] person on inquiry,"

---

[3] The interrogatory answer stated:  "Plaintiff will not seek more than $500,000.00 for all of her damages and may seek less than this amount of money once the plaintiff has fully and finally totaled her medical bills, which currently are close to $50,000, and after evidence of Plaintiff's loss of earnings capacity has been fully gathered and analyzed." 2001 WL 34127779 at *7.

[4] As noted in *Mumfrey*, the *Bosky* court mistakenly understood that this standard differed from (in that it required an even "greater level of certainty" than) the standard for triggering the removal clock based on an initial pleading (*i.e.*, under 28 U.S.C. § 1446(b)(1)). *Mumfrey*, 2013 WL 2476402 at *6 (statement in *Bosky* "that complaints stating unspecified damage amounts trigger the time limit — is incorrect.").  *Mumfrey* made clear that the bright-

it does not trigger the removal period unless it "permit[s] him to learn with certainty." *Id.* Therefore, in order to start the time limit for removal, the facts supporting removal contained in the amended pleading or other paper must be "unequivocally clear and certain." *Id.*

Here, plaintiff stated in his responses to interrogatories, dated November 20, 2012, that he had "settled with tortfeasor's insurer, Geico Indemnity Insurance Co., for policy limits of $30,000.00." Rec. Doc. 4-5 at 7. This response does not provide "unequivocally clear and certain" notice that the case had become removable. It does not state that Sykes (the only non-diverse defendant) had been dismissed. In fact, she had not been dismissed. Plaintiff argues that his discovery response put State Farm on notice such that it should have taken action to learn whether Sykes had been dismissed. *See* Rec. Doc. 8 at 2. This is precisely the sort of inquiry that the bright line rules enunciated in *Chapman* and *Bosky* were designed to avoid. The Fifth Circuit has repeatedly rejected the "so-called due-diligence standard," which would require courts to expend judicial resources trying to speculate about what a defendant knew or "what the defendant would have known had it exercised due diligence." *Chapman*, 969 F.2d at 163; *see also Mumfrey,* 2013 WL 2476402 at *5; *Bosky*, 288 F.3d at 211.

Plaintiff did not move to dismiss his claims against Sykes until December 7, 2012. (Rec. Doc. 4-6). It is undisputed (1) that neither counsel nor the state court clerk served a copy of the dismissal on State Farm, and (2) that State Farm first received a copy of the dismissal on March 11, 2013. This was the first paper to provide "unequivocally clear and certain" notice from which State Farm was able to "ascertain" (*i.e.*, "learn with certainty") that plaintiff had moved to

---

line rule enunciated in *Chapman* remains the law even for initial pleadings. *Id.* If removability is not "affirmatively reveal[ed]" on the face of the initial pleading, then it does not trigger the removal clock. *Id.* In the case of jurisdictional amount, this requires a specific allegation that damages are in excess of $75,000. *Id.* at *7.

10

dismiss Sykes as a defendant. *Bosky,* 288 F.3d at 211.[5]  Given that State Farm filed its notice of removal within thirty days of receipt of this paper, removal was timely.

Accordingly, for all of the foregoing reasons;

**IT IS ORDERED** that the plaintiff's Motion to Remand (**Rec. Doc. 4**) is hereby **DENIED**.

New Orleans, Louisiana, this 19th day of July, 2013.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**

---

[5]  *cf. Smith v. Daimler Trucks North America, LLC*, 2011 WL 1661514 (N.D. Tex. 2011) (although removing defendant knew of settlement, it did not receive an other paper with "unequivocally clear and certain" notice of in-state defendant's dismissal until receiving the court's order); *Polk v. Sentry Insurance*, 129 F. Supp. 2d 975, 980 (S.D. Miss. 2000) (for "other paper" to trigger thirty-day clock in case of voluntary dismissal of non-diverse defendant, the paper "must clearly and definitively evidence the plaintiff's desire voluntarily to dismiss any non-diverse defendant").